UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIAS MENDOZA PEREZ,<br><br>             Petitioner,<br><br>     v.<br><br>MARGARET MIMS,<br><br>             Respondent. | No.  1:16-cv-01935-SKO  HC<br><br>**ORDER DENYING PETITIONER'S MOTION FOR STAY OF EXTRADITION**<br><br>**(Doc. 4)** |

Petitioner Elias Mendoza Perez moves for a stay of extradition pending resolution of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The United States of America and Respondent, Margaret Mims, Fresno County Sheriff, in her capacity as warden of the Fresno County Jail, where Petitioner is detained, oppose the motion.

**I.     Procedural Background**

On May 15, 2015, a warrant issued for Petitioner's arrest pursuant to the Government's complaint for provisional arrest under the extradition treaty between the United States and Mexico.  *See United States of America v. Elias Mendoza Perez*, No. 1:15-mj-00074-SKO, Docs. 1 and 2.  The United States submitted a formal request for Petitioner's extradition based on a pending charge of homicide in the Mexican state of Michoacan.  On February 29, 2016, a Magistrate Judge conducted a formal extradition hearing.  On March 11, 2016, the Court issued a

1

Certification of Extraditability and Order of Commitment based on a finding of probable cause and ordered Petitioner's extradition to Mexico.

On March 31, 2016, Petitioner filed his first petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See Perez v. Mims*, No 1:16-cv-00447-DAD-SKO, Doc. 1. Petitioner contended that (1) his extradition to Mexico would violate the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("the Convention"), 1465 U.N.T.S. 85, because he has a "credible fear" that he will be tortured and killed if he is extradited to Mexico, and (2) regardless of whether the Convention applies, an exception to extradition on "humanitarian grounds" should be applied to his specific case. On June 14, 2016, a Magistrate Judge filed findings and recommendations, in which she recommended that the petition be denied because (1) Petitioner's claim that extradition would violate his rights under the convention against torture was not ripe for review, (2) Petitioner's arguments that extradition would violate the convention against torture was outside the scope of habeas review, and (3) even if the claim were ripe for review, no humanitarian exception to the rule of non-inquiry existed to authorize the Court's inquiry into the procedures or treatment that Petitioner would experience if were extradited to Mexico. On October 31, 2016, the Court adopted the findings and recommendations, and denied the habeas petition without prejudice.

On December 27, 2015, the United States Secretary of State signed the surrender warrant authorizing Petitioner's extradition to Mexico. The State Department informed Petitioner that it made the decision to extradite "[f]ollowing a review of all pertinent information, including the materials submitted to the Department of State and pleadings and filings, including those submitted to the U.S. District Courts for the District of Columbia and the Eastern District of California, on behalf of Elias Mendoza Perez." The letter acknowledged the United States' obligation, pursuant to the Convention, not to extradite any person to a country "where there are substantial grounds for believing that he would be in danger of being subjected to torture." It added that "[t]he Department carefully and thoroughly considers both claims cognizable under the Convention and [other] humanitarian claims and takes appropriate steps, which may include

obtaining information or commitments from the requesting government, to address the identified concerns."

On December 28, 2016, Petitioner filed his second federal petition for writ of habeas corpus in this Court and moved to stay extradition pending its resolution.

## II.  Stay of Extradition

"A stay is not a matter of right, even if irreparable injury might otherwise result to the appellant. It is an exercise of judicial discretion." *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672-73 (1926). Because "[t]he propriety of its issue is dependent upon the circumstances" (*Id.*), the Court must analyze the four relevant factors according to the specific facts and circumstances of the individual case. *Nken v. Holder*, 556 U.S. 418, 434 (2009). The traditional four factors for determining the propriety of a stay of proceedings are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and (4) where the public interest lies." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "The first two factors are the most critical." *Nken*, 556 U.S. at 434. "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the Court's] discretion." *Id.*

### A.  Probability of Success on the Merits

The first factor that a court must consider in assessing the propriety of staying an extradition order is the likelihood that the habeas petition will succeed on the merits. Although more than the "mere possibility of relief" is required, *Nken*, 556 U.S. at 434, a petitioner need not establish that success is more likely than not. *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). The Ninth Circuit has suggested that the proper measure is a reasonable likelihood or reasonable probability of success. *Id.* at 967.

#### 1.  Extradition Proceedings

Extradition is "the surrender by one nation to another of an individual accused or convicted of an offense outside of its own territory, and within the territorial jurisdiction of the other, which, being competent to try and to punish him, demands the surrender." *Terlinden v.*

3

*Ames,* 184 U.S. 270, 289 (1902).  Extradition from the United States is governed by 18 U.S.C. § 3184, which "confers jurisdiction on any justice or judge of the United States or any authorized magistrate to conduct an extradition hearing under the relevant extradition treaty between the United States and the requesting nation."  *Cornejo-Barreto v. Seifert,* 218 F.3d 1004, 1009 (9th Cir. 2000), *overruled on other grounds by Trinidad y Garcia v. Thomas*, 683 F.3d 952, 957 (9th Cir. 2012).

"The extradition process is ordinarily initiated by a formal request from a foreign government to the Department of State, which along with the Department of Justice, evaluates whether the request is within the scope of the relevant extradition treaty between the United States and the requesting nation."  *Barapind v. Reno,* 225 F.3d 1100, 1105 (9th Cir. 2000); *Cornejo-Barreto,* 218 F.3d at 1009.  "Once approved, the United States Attorney for the judicial district where the person sought is located files a complaint in federal district court seeking an arrest warrant for the person sought."  *Barapind,* 225 F.3d at 1105; *Cornejo-Barreto,* 218 F.3d at 1009.  A hearing is then held before a federal judge to determine whether the offense is extraditable and probable cause exists to sustain the charge(s).  *Prasoprat v. Benov*, 421 F.3d 1009, 1012 (9th Cir. 2005); *Cornejo-Barreto*, 218 F.3d at 1009.  If these requirements are met, the magistrate judge must certify to the Secretary of State that the individual is extraditable.  18 U.S.C. § 3184.

The magistrate judge who presides over the hearing "has no discretionary decision to make."  *Lopez-Smith v. Hood*, 121 F.3d 1322, 1326 (9th Cir. 1997), *superseded on other grounds by Cornejo-Barreto*, 218 F.3d at 1010.  Rather, "[i]f the evidence is sufficient to sustain the charge, the inquiring magistrate judge is required to certify the individual as extraditable to the Secretary of State and to issue a warrant."  *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1208 (9th Cir. 2003).  The Secretary of State then determines in his discretion whether the individual will be surrendered.  *Id.*

The procedural background above illustrates procedural compliance with the extradition process, culminating in the December 27, 2015, order for Petitioner's removal to Mexico to stand trial for homicide.

4

### 2. Pending Habeas Petition

"A petition for habeas corpus is the only method of review of an order certifying extradition." *Artukovic v. Rison*, 784 F.2d 1354, 1355 (9th Cir. 1986); *see also Collins v. Miller*, 252 U.S. 364, 369 (1920); *Caplan v. Vokes*, 649 F.2d 1336, 1340 (9th Cir. 1981). Habeas review of an extradition order is "severely limited." *Artukovic*, 784 F.2d at 1355. "The petition may challenge the order only in the narrow grounds of whether the extradition court had jurisdiction over the proceedings and the fugitive; whether the offense charged is within the extradition treaty; and whether there was *any* evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Id.* at 1356 (quoting *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925) (emphasis added)).

Petitioner does not challenge his extradition order on any of these three bases, but seeks to set it aside based on its violation of the United Nations Convention Against Torture. Neither the habeas petition nor the brief submitted in support of the pending stay motion articulates the provisions of the Convention or explains how the Convention interacts with the extradition treaty on which the order for Petitioner's extradition is based.

### 3. United Nations Convention Against Torture

The Convention is a treaty signed and ratified by the United States, 136 Cong. Rec. 36,198 (1990), and implemented by statute as part of the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), 8 U.S.C. § 1231 note. The statute declares that it is "the policy of the United States not to . . . extradite . . . any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture." *Id*. The statute requires that "the appropriate agencies . . . prescribe regulations to implement the obligations of the United States under Article 3 of the United Nations Convention Against Torture." *Id*.

The Convention and its implementing regulations are binding domestic law, which means that the Secretary of State must make a torture determination before surrendering an extraditee who makes a claim under the Convention. FARRA and its regulations generate interests cognizable as liberty interests under the Due Process Clause. *Trinidad y Garcia*, 683 F.3d at 956-

57 (citing U.S. Const. amend. V); *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Goldberg v. Kelly*, 397 U.S. 254 (1970)).  As noted by the Ninth Circuit:

> The process due here is that prescribed by the statute and implementing regulation: The Secretary must consider an extraditee's torture claim and find it not "more likely than not" that the extraditee will face torture before extradition can occur.  An extraditee thus possesses a narrow liberty interest: that the Secretary comply with h[is] statutory and regulatory obligations.

*Trinidad y Garcia*, 683 F.3d at 957 (quoting 22 C.F.R. § 95.2).

Petitioner's "liberty interest under the federal statute and federal regulations entitles him to *strict compliance* by the Secretary of State with the procedure outlined in the regulations." *Id.* (emphasis added).  Petitioner does not allege that the Secretary of State failed to comply with the statutory procedure, but that the Secretary of State erred by failing to agree with petitioner's contention of his likely torture following extradition to Mexico.  Review of the extradition magistrate judge's decision on this ground is outside the scope of this Court's habeas review.  *See Fernandez*, 268 U.S. at 312 (stating that "habeas corpus is available only to inquire whether the magistrate had jurisdiction, whether the offense charged is within the treaty and . . . whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty"); *Sindona v. Grant*, 619 F.2d 167, 175 (2d Cir. 1980) (stating that "the degree of risk to [petitioner]'s life from extradition is an issue that properly falls within the exclusive purview of the executive branch" and that "'[r]eview by habeas corpus . . . tests only the legality of the extradition proceedings; the question of the wisdom of extradition remains for the executive branch to decide'") (quoting *Wacker v. Bisson*, 348 F.2d 602, 606 (5th Cir. 1965)).

    **4.**  **Conclusion**

The petition for habeas corpus is unlikely to prevail on its merits.

**B.**  **Irreparable Injury**

"[S]imply showing some 'possibility of irreparable injury' fails to satisfy the second factor." *Nken*, 556 U.S. at 434-35.  "A proper showing of irreparable injury was, and remains, a necessary but not sufficient condition for the exercise of judicial discretion to issue a stay."

*Leiva-Perez*, 640 F.3d at 965.  "Even certainty of irreparable harm has never *entitled* one to a stay."  *Id.*

Petitioner's sole argument is that he would lose the ability to prosecute his habeas claims if he were extradited to Mexico.  "[T]he burden of removal alone cannot constitute the requisite irreparable injury."  *Nken*, 556 U.S. at 435.

Petitioner argues that he has proven irreparable injury in that he will be tortured or killed if he is returned to face prosecution in Mexico.  As discussed in the analysis of Petitioner's likelihood of prevailing in the pending habeas action, whether Petitioner may face torture upon his return to Mexico is outside this Court's habeas jurisdiction.

### C. **Public Interest**

The third and fourth factors merge when the Government is the opposing party.  *Leiva-Perez*, 640 F.3d at 970.  "While we consider 'the public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm,' we are also mindful of the fact that there is also a public interest 'in prompt execution of removal orders,' which 'may be heightened' in certain circumstances, such as those involving 'particularly dangerous' noncitizens."  *Id.* (quoting *Nken*, 556 U.S. at 436).  The public interest is also served through compliance with an existing extradition treaty.  *Artukovic*, 784 F.2d at 1356.  "[P]roper compliance [with an existing extradition treaty] promotes relations between the two countries, and enhances efforts to establish an international rule of law and order."  *Id.*

The Court cannot disregard the Government's interest in preserving an extradition treaty that also returns fugitives from American justice to the United States.  Individuals facing homicide charges flee the law by crossing the border between the United States and Mexico in both directions.

"The surrender of a fugitive, duly charged in the country from which he has fled with a nonpolitical offense and one generally recognized as criminal at the place of asylum, involves no impairment of any legitimate public or private interest."  *Factor v. Laubenheimer*, 290 U.S. 276, 298 (1933).  The public interest in the extradition of an accused murderer in compliance with an

existing extradition treaty with a country with whom the United States shares a border weighs against the grant of a stay of extradition.

### D. Summary

Because Petitioner (1) is unlikely to succeed on the merits and (2) has failed to demonstrate irreparable injury absent a stay, and (3 and 4) the public interest weighs against granting a stay in this case, the Court will deny a stay of the extradition order.

### III. Conclusion and Order

Petitioner's motion for a stay of the extradition order pending resolution of his petition for writ of habeas corpus is hereby DENIED.

IT IS SO ORDERED.

Dated:   **January 25, 2017**                                      /s/ *Sheila K. Oberto*
                                                                                      UNITED STATES MAGISTRATE JUDGE